IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Theodore R. Edwards,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>　　　　Defendant. | No. 1:06-cv-00814-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

## **PRELIMINARY STATEMENT**

1. This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment. In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

## **JURISDICTION**

2. This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981"). Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4), 28 U.S.C. § 1331 and 28 U.S.C. § 1337. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

## PARTIES

3. Theodore R. Edwards is a Black employee of NGSS who has been employed by NGSS for over 28 years.

4. NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian. It is located in Pascagoula, Mississippi. It is an employer for purposes of Title VII. On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended. NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit: an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8. On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

**PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race. The case was assigned a case number of 1:01-cv-111-(G)-(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

    a)  Dismissal of the class action allegations seeking compensatory and punitive damages;

    b)  Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

    c)  Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

    d)  Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

    e)  Dismissal of defendant LITTON INDUSTRIES; and

    f)  Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-cv-111-(LG)-(RHW).

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Theodore R. Edwards' severed action was assigned the case number of 1:06-cv-00814-(LG)-(RHW).

## FACTUAL STATEMENT
## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

   a) By failing to treat Blacks on an equal basis with Whites.

   b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

   c) By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

   d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

   e) By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting position have

inured to the determent of Black employees historically.

f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h) By demoting Black employees at a disproportionate rate as compared to White employees.

i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF
## TITLE VII AND § 1981

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

21. Plaintiff has worked for 36 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat." In 1979, plaintiff along with other Black and White employees were asked to become members of a new department, Department 49, at the shipyard. These employees were led to believe that once this department became functional, they would be considered for promotions in that department. Plaintiff and other employees were asked to volunteer for assignment in this department by various supervisors, and based on the request made to him by his then supervisor, Mr. Eatman, plaintiff volunteered for this placement in this new department by transferring from his former department, No. 9. It became clear fairly early that plaintiff and other black employees would not be considered for promotions, and, indeed, Mr. Eatman transferred out of it because it became clear to him that he was not going to be promoted in the new department. Rather, a White Supervisor, Mr. Jake Ivey was made the supervisor. Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist. Plaintiff has made it known that he has been interested in being selected for the position of "leaderman "or "half-hat," however, plaintiff has never been selected for the position in spite of his 36 years at NGSS. Plaintiff has not been informed in any way that he was not qualified for the position of "leaderman" or "half-hat." Indeed, plaintiff was named Operations Employee of the Month in August 2000. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This has occurred in at least the following instances:

    a) Starting in 1979, plaintiff made it clear that he wanted to be promoted to work leaderman, a position for which plaintiff was qualified, but for which he was not selected because of his race.

    b) For example, around 1985-86 two White employees, Mr. Bowman and Mr. Kelly, who had less experience than Edwards were promoted over him. To plaintiff's knowledge, there was nothing posted to indicate that these positions were available; nor was he informed in any manner that he was not qualified to hold

either of these or any other promotive position.

c) Again in 2000, approximately 11 White employees were promoted to work leaderman and supervisory positions, jobs that were not posted in the shipyard newsletter and that Plaintiff did not know were available. One of the White promotees was R.J. Garrett, whom Edwards had trained, but was not Navy certified in welding. Mr. Garrett is now a supervisor.

d) In 2004, Jerry Presley, a White foreman from outside Plaintiff's section was promoted to supervisor over Plaintiff, even though the White worker did not know the jobs performed in the section. Edwards' foreman told him that no promotions would be made to supervisor or foreman unless the individual had attended supervisor's school, but Edwards' is aware that whites have continually been promoted to supervisor or foreman who have not attended supervisor's school.

22. Plaintiff has worked for 36 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat." Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist; however, plaintiff is aware that numerous White employees have been selected for the position of "leaderman" or "half-hat" without having made any such interest known. However plaintiff has never been selected for the position in spite of his 36 years at NGSS. Plaintiff has not been informed in any way that he was not qualified for the position of "leaderman" or "half-hat." The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

a) Plaintiff has not been considered for overtime assignment when White co-workers with less seniority have been assigned overtime work. As recently as April 2002, plaintiff complained about the fact that he and other Black employees were not getting overtime assignments while White workers with less seniority were given

such assignments.

    b) In 2001, plaintiff requested a raise because similarly situated White workers with less experience than he had were being paid more salary than he was. He was denied the raise; his White supervisor, Neal Lowry, told him that the money left from the eliminated position of welding supervisor had been split among Lowry and another White supervisor, Don Coulter, so that there was no money available to give Edwards a raise.

23. Plaintiff has made his supervisor(s) aware that he desired to be chosen to participate in sea trials and trips. However, he has never been selected to participate in any sea trials and trips in spite of being qualified to be chosen, while his similarly situated White colleagues have overwhelmingly been selected to do so. Furthermore, the selection process for participating in sea trials has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This has occurred in, but is not limited to, the following instances:

    a) Starting from the time that plaintiff was assigned to department 49, plaintiff informed his supervisors of his desire to participate in sea trials, but he has never been chosen to go on any sea trial.

    b) In the late 1990s, plaintiff asked his union why he had not been allowed to go on trips to other shipyards, e.g. Norfolk Shipyard, that specialize in his craft. Management told the union that Plaintiff was classified as a mechanic and not a specialist, so he was not eligible to go on such trips. However, the documents associated with Plaintiffs' 25-year Length of Service Award, received in January 1998, state that Plaintiff is "doing an outstanding job welding doors, hatches, and scuttles for us." Plaintiff is aware of the fact that his White co-workers have been selected for these trips, because in his 25 years as a reservist in the United States Marine Corp, he has observed his White co-workers at these various shipyards on assignment.

24. Plaintiff has made his supervisor(s) aware that he desired to receive certain training, including training on the robotic welding machine. In November 1999, plaintiff attempted to sign up for robot welding course, but he was told that he would have to give up his day shift and work the night shift. In so doing, he would have been forfeiting his seniority so that he would no longer be eligible for the day shift. Howard Weaver, superintendent of Dept. 49, and union steward Marshall Stark demanded that Edwards and other Black workers sign a document stating that they had been offered training, but that plaintiff could not take the training because he would be forced to give up his day shift. Before this time, training had always been offered during the day, until plaintiff and other Black workers attempted to attend the training. Subsequently, two of the Black workers who took the training course were denied the opportunity to work on the robot welder, even though they had given up their day shifts and seniority to be trained.

25. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace. Plaintiff has been assigned to such employment environments in the following, but not limited to, instances:

    a) Since 1979, plaintiff has been assigned to department. 49, and, since 1981 or 1982, he has been assigned to work on the door line, which is known to be one of the dirtiest departments where contraction of disease is possible. The area is very dirty and dangerous because of excessive amounts of smoke and dust in the air from the welding. Plaintiff knows co-workers who have experienced lung problems from exposure to this working environment. Plaintiff has complained numerous times verbally about his working conditions to White supervisor Mark Hanson and work leaderman Jerry Roberts, as well as to others. So far there has been no action taken on Plaintiff's complaints.

26. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on

a constant basis in a number of places at NGSS.  NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about being subjected to the offensive racially derogatory writings, depictions, and/or graffiti, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS.  Such exposure has occurred in, but are not limited to, the following instances:

   a) Edwards has seen racist graffiti in the restrooms on both banks of the shipyard, including all of the East Bank restrooms and some on the West Bank, from 1979 to about 2000.  He has seen this graffiti inside stalls, outside on the doors of stalls, and at sinks.  Some of this graffiti has referred to the KKK.  Furthermore, plaintiff is certain that anyone who has used the restrooms during that period, including supervisory personnel, would have seen the graffiti.  Indeed, he has been in graffiti-ridden restrooms at the same time as supervisors and other members of management.

27. Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, on a constant basis in a number of places at NGSS.  NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS, and he feared retaliation for making any such complaints.  Such exposure has occurred in the following instances:

    a) In 1980, plaintiff heard the word "nigger" uttered by Lacy Green. Plaintiff did not complain about being subjected to this slur because he feared retaliation.

    b) Similarly, plaintiff has seen the word "nigger" or another racial epithet contained in the graffiti to which he has been subjected in the various restrooms.

28. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to nooses in a number of places at NGSS. NGSS knows or should have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has complained about seeing these nooses, but the response has always been insufficient to remedy the situation. Plaintiff has not complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS. Such exposure has occurred in, but is not limited to, the following instances:

    a) Plaintiff has seen both real and depicted nooses from the time that he was first employed at the shipyard. Indeed, there was one that remained in the rafters of the old pipe shop until August 2005.

29. Plaintiff has been subjected to a hostile work environment when one of his co-workers as recently as this year set up signs over a dual water fountain that indicated that one of the fountains was for Whites and the other was for Black workers.

30. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 25, incorporated as though fully set forth herein.

31. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

32. Plaintiff has been subjected to a hostile work environment based on plaintiff's race.

Plaintiff Theodore R. Edwards' Complaint for    11
Damages and Declaratory and Injunctive Relief
No. 1:06-cv-00814-LG-RHW

Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

33. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

34. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace. NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding the same. NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 26 through 33, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

35. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

36. No plain, adequate, or complete remedy at law is available to plaintiff. The loss of promotional opportunities, experience, and careers with NGSS cannot be adequately compensated by monetary relief. Similarly, the continued subjection to a racially hostile work environment cannot be adequately compensated by monetary relief.

37. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

38. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 37 and further alleges for a first claim for relief as follows:

39. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

40. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 39 and further alleges for a second claim for relief as follows:

41. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

42. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

43. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

## PRAYER

WHEREFORE, plaintiff prays that this Court:

    a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 17 through 34 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Issue a preliminary and permanent injunction enjoining NGSS, its agents, successors, employees, attorneys, and those acting in concert with it from engaging in each of the unlawful practices set forth in paragraphs 17 through 34 and from continuing other practices found to be in violation of applicable law;

d) Direct NGSS to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

e) Enter a permanent mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

f) Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. The plan should also outline steps to be taken to ensure that jobs available remain open until the posting period has expired;

g) Require that NGSS institute a policy that affords equal opportunities for training and development. The policy should include the requirement that such training opportunities must be announced to the entire workforce as well as a procedure consisting of a rotation scheme and other procedures to ensure that training for job advancement is afforded to all those who are interested;

h) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

i) Grant such punitive, general, and special damages as proved at trial;

j) Award plaintiff the costs and litigation expenses of this action and reasonable

attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

k) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated: September 29, 2006

SANDRA JARIBU HILL, Esq.
Mississippi Workers Center for Human Rights

WILLIAM C. MCNEILL, III, Esq.
The Legal Aid Society-Employment Law Center

Counsel for Plaintiffs

By:   /s/ William C. McNeill, III
WILLIAM C. McNEILL, III, Esq.

William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552

  /s/ Laurel Kapros
Laurel Kapros