IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| THEODORE EDWARDS | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:06CV784HSO-JMR |
| | § | |
| HUNTINGTON INGALLS, INC. | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion for Summary Judgment filed September 24, 2010 [398-1], in the above-captioned cause by Defendant, Huntington Ingalls, Inc. ["Defendant"].  Plaintiff Theodore Edwards ["Plaintiff"] has filed a Response in opposition to Defendant's Motion [401-1], and Defendant has filed a Rebuttal [402-1].  After due consideration of the record, the submissions on file, and the relevant legal authorities, the Court finds that because Plaintiff's claims are subject to the doctrine of judicial estoppel, Defendant's Motion for Summary Judgment [398-1] is well taken and should be granted.

I. FACTS AND PROCEDURAL HISTORY

An initial Complaint [1-1] was filed in this Court on March 21, 2001, and a First Amended Complaint was filed on April 26, 2001, naming eleven (11) individuals and the Ingalls Workers for Justice as Plaintiffs.  Plaintiff Theodore Edwards was not a named Plaintiff in the original suit.  Named Defendants were Ingalls Shipbuilding, Inc., Litton Industries, and Northrop Grumman.  All three Defendants filed a Motion to Dismiss [7-1] on June 20, 2001, pursuant to Federal Rule of Civil Procedure 12.  As detailed in its Memorandum Opinion [16-1] of

February 27, 2002, and pursuant to its Judgment of February 28, 2002 [17-1], the Court dismissed Plaintiffs' Thirteenth Amendment and Title VI claims, dismissed Litton Industries and Northrop Grumman as Defendants, dismissed Ingalls Workers for Justice as a Plaintiff, and dismissed Plaintiffs' class action claims.   In their Motion to Alter or Amend Judgment filed on March 14, 2002 [18-1], the remaining Plaintiffs moved the Court to reconsider its entry of judgment dismissing their class action allegations.  In a separate Motion for Entry of a Separate Judgment filed April 22, 2002 [23-1], the remaining Plaintiffs sought to appeal the Court's prior order.  The Court denied both of these Motions by Order entered on July 10, 2002 [26-1].

On July 16, 2002, by way of a Motion for Leave to File a Complaint in Intervention [27-1], putative class members requested leave to intervene as Plaintiffs in this action, pursuant to Federal Rule of Civil Procedure 24.  For the first time, Plaintiff Theodore Edwards was identified as a putative class member and as a Plaintiff-Intervenor in the proposed "Complaint in Intervention for Declaratory Judgment and Injunctive Relief and Damages." Ex. "A" [27-2], att. to Mot. for Leave to File a Compl. in Intervention.  The Court granted leave to amend on January 28, 2003 [40-1], and the Complaint in Intervention was filed on February 13, 2003 [42-1], naming an additional 171 Plaintiffs-Intervenors, including Plaintiff Theodore Edwards.  On April 7, 2003, with leave of Court, Plaintiffs collectively filed a Second Amended Complaint [48-1].

On May 8, 2003, Defendant filed a Motion to Sever [50-1], seeking to sever

-2-

each individual Plaintiff's claims into a separate case, consolidated solely for the purpose of discovery, which the Court denied, without prejudice, pursuant to an Order signed March 31, 2004 [56-1].  On June 30, 2006, the Court issued an Order to Show Cause [330-1] as to why Plaintiffs' claims should not be severed into separate causes of action.   Plaintiffs filed a collective Response [342-1] to this Order on July 20, 2006.  Defendant subsequently filed a Motion to Sever on August 4, 2006 [349-1], which the Court granted on August 17, 2006 [360-1], and required Plaintiffs to file separate complaints.  On September 29, 2006, following severance of his claims, Plaintiff filed an Individual Complaint for Injunctive and Declaratory Relief and Damages [362-1].  Defendant filed its Answer on October 27, 2006 [363-1].

In 2008, the Court entered an Order administratively closing all Northrop Grumman cases while the claims of all but fourteen (14) Plaintiffs were heard and resolved through arbitration.   Plaintiff was one (1) of the fourteen (14) who opted out of the arbitration proceedings.  Upon conclusion of the various arbitrations, the Court conducted a status conference on August 23, 2010, following which it reopened the above captioned cause, determined that all discovery had been completed, and set this case for trial to commence on the Court's October 2011 trial calendar.  Defendant filed the instant Motion for Summary Judgment on September 24, 2010.[1]

---

[1]The instant Motion is timely reasserted pursuant to the Court's Order entered on May 27, 2008 [378-1].

In his Complaint, Plaintiff seeks injunctive and declaratory relief to prevent alleged continuing, systemic, and unjustified race discrimination by Defendant, with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees.  Pl.'s Compl., ¶1 [362-1].  Plaintiff, a Black employee of Defendant for well over 25 years, *id.*, ¶¶ 3, 21, alleges severe, pervasive, and ongoing harassment through longstanding maintenance of a racially hostile work environment, *id.*, ¶¶ 1, 26-34.  Plaintiff charges that he has been denied promotions and transfers by Defendant because of his race.  *Id.* ¶¶ 17, 21-24. Plaintiff further claims that he was demoted based on his race, and was subjected to racial job tracking.  *Id.* at ¶ 25, 26.  In addition to injunctive and declaratory relief, Plaintiff requests both compensatory and punitive damages.  *Id.*, ¶¶ 42-43, (I).

In support of the present Motion for Summary Judgment before the Court, Defendant does not argue the merits of Plaintiff's claims, but rather contends that they are barred by the doctrine of judicial estoppel and, consequently, that it is entitled to summary judgment.[2]  Def.'s Mem. in Supp. of Mot. for Summ. J., p. 10.

## II. <u>DISCUSSION</u>

### A.   <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim, counterclaim, or cross-claim as to which there

---

[2]Defendant filed a separate Motion for Summary Judgment on May 16, 2011 [399-1], addressing the merits of Plaintiff's claims.

is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.  In applying this standard, the Court views evidence in the light most favorable to the non-movant.  *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (citing *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997)).

A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id.* at 324-25.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).

B.   Chapter 13 and Judicial Estoppel

Plaintiff filed for Chapter 13 bankruptcy protection on June 25, 2007.  Pl.'s Bankr. Pet., att. as Ex. "F" to Def.'s Mot. for Summ. J.  All property, including any causes or potential causes of action, belonging to a debtor as of the commencement of a bankruptcy case, become property of the bankruptcy estate as of commencement of the bankruptcy case.  *See* 11 U.S.C. § 541(a); *Matter of Swift*, 129 F.3d 792, 795 (5th Cir. 1997).  In Chapter 13 cases, the estate also includes legal claims and causes of action that a debtor acquires "after the commencement of the

[bankruptcy] case but before the case is closed, dismissed, or converted. . . . " 11

U.S.C. § 1306(a)(1).

> The Bankruptcy Code subjects debtors to a 'continuing duty to disclose all pending and potential claims.' *Kane,* 535 F.3d at 384-85. Legal causes of action, including "possible" causes of action, are assets that must be disclosed in bankruptcy. The Fifth Circuit has held that a 'debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information ... prior to confirmation to suggest that it may be a possible cause of action, then it is a 'known' cause of action such that it must be disclosed.' *In re Coastal Plains,* 179 F.3d 197, 208 (5th Cir.1999). The appellate court in *Coastal Plains* went on to note that "[a]ny claim with potential must be disclosed, even if it is contingent, dependent, or conditional." *Id.*

*Young v. Town of Greenwood,* 2009 WL 1924192, *2 (W.D. La. 2009).

According to Chapter 13, "[e]xcept as provided in a confirmed plan or [an] order

confirming a plan, the debtor shall remain in possession of all property of the estate."

11 U.S.C. § 1306(b).

> Under the Bankruptcy Code, substantially all of a debtor's existing assets, 'including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition.' *Kane v. Nat'l Union Fire Ins. Co. et al.,* 535 F.3d 380, 385 (5th Cir.2008)(per curiam)(citing 11 U.S.C. § 541(a)(1)); *State Farm Life Ins. Co. v. Swift (In re Swift),* 129 F.3d 792, 795 (5th Cir.1997); 5 Collier on Bankruptcy § 541.08. . . . In Chapter 13 cases, the estate also includes legal claims and causes of action that are acquired 'after the commencement of the [bankruptcy] case but before the case is closed, dismissed, or converted.' 11 U.S.C. § 1306(a)(1) & § 541(a)(1).

*Cargo v. Kansas City Southern Ry. Co.*, 408 B.R. 631, 636 (W.D.La. 2009).

It is clear that Plaintiff had already asserted his claims in this case by the time he

sought bankruptcy protection in 2007.

The doctrine of judicial estoppel "'prevents a party from asserting a position in

-6-

a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" *Hall v. GE Plastic Pacific PTE, Ltd.,* 327 F.3d 391, 396 (5th Cir. 2003)(quoting *Ergo Science, Inc., v. Martin,* 73 F.3d 595, 598 (5th Cir. 1996)). "The purpose of the doctrine is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir. 1999)(citing *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir. 1988)(internal quotation marks, parentheses, and citation omitted)).

Generally, judicial estoppel is "applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* at 206 (quoting *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (3d Cir. 1953)). The Supreme Court has articulated three factors to evaluate in determining whether the doctrine of judicial estoppel should apply:

> (1) a party's later position must be clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine,* 532 U.S. 742, 750-51 (2001) (quoting *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 599 (6th Cir. 1982)).

The Fifth Circuit recognizes three factors which must be satisfied in order to invoke judicial estoppel: "(1) the party's position must be clearly inconsistent with its previous one; (2) the court must have accepted the party's earlier position; and (3) the

non-disclosure must not have been inadvertent." *Kane v. National Union Fire Ins. Co.*, 535 F.3d 380, 386 (5th Cir. 2008)(quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)).   Based on the record presented, the Court is persuaded that the foregoing principles of judicial estoppel apply to the present case.  *See Reed v. City of Arlington*, 2011 WL 3506100 *3 (5th Cir. 2011); *In re Coastal Plains, Inc.*, 179 F.3d at 205; *Cargo*, 408 B.R. at 639.

As explained in more detail below, Plaintiff does not dispute the material facts cited in Defendant's Motion for Summary Judgment.   Plaintiff argues that his bankruptcy "is still active and subject to modification."  Pl.'s Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J., p. 1.   Citing to an inadvertent omission, "Plaintiff moves this Court for an extension of time to seek relief in the bankruptcy court . . . ." *Id.* at p. 2.

The record before the Court demonstrates that Plaintiff, at the time of his bankruptcy filing in 2007, had knowledge of the facts giving rise to his claims. Plaintiff signed his bankruptcy Petition, as well as his bankruptcy schedule and amended bankruptcy schedule, under penalty of perjury.   On November 16, 2007, the Bankruptcy Court entered an Order confirming Plaintiff's Chapter 13 Plan.  *Id.*; Ex. "H" to Def.'s Mot. for Summ. J.   In part, the confirmation Order provided for "payments to the Trustee in the amount of $631.00 per months for 60 months with all allowed nonpriority, unsecured claims to be paid 17%, or higher, PRO RATA." *Id.*  The record unequivocally demonstrates that Plaintiff has never filed or sought to amend or correct his bankruptcy schedules to include his discrimination claims against

Defendant in this case.  No genuine issues of material fact exist on this point which would preclude a grant of summary judgment.

In determining whether Plaintiff is judicially estopped from asserting his present claims against Defendant, the Court must consider:  (1) whether Plaintiff's position now is plainly inconsistent with his prior legal position; (2) whether Plaintiff convinced a court to accept that prior position; and (3) whether Plaintiff would gain an unfair advantage or impose a detriment on others and whether his actions were inadvertent.  *See Kane v. Nat'l Union Fire Ins.*, 535 F.3d 380, 386 (5th Cir. 2008); *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir.  2005)(citing *In re Coastal Plains*, 179 F.3d at 206-07)).

1.    Is Plaintiff's Position Plainly Inconsistent with His Prior Legal Position?

It is clear in the Fifth Circuit that if a plaintiff fails to disclose a cause of action to the bankruptcy court, that plaintiff takes an inconsistent position by later pursuing the undisclosed cause of action.  *In re Superior Crewboats*, 374 F.3d 330, 335 (5th Cir. 2004); *see also Jethroe*, 412 F.3d at 600.

Plaintiff filed for Chapter 13 Bankruptcy protection on June 25, 2007, and did not list his discrimination claim in either his Petition or his bankruptcy schedule.  Pl.'s Bankr. Pet., Ex. "F" to Def.'s Mot. for Summ. J.; Pl.'s Bankr. Schedule, Ex. "F" to Def.'s Mot. for Summ. J.   At the time these documents were filed, Plaintiff signed a declaration attesting to the truth and correctness of the Debtor's Schedules, under penalty of perjury.  In Paragraph 21 of his Bankruptcy Schedule B, entitled "Personal Property," Plaintiff was required to identify "[o]ther contingent and unliquidated

claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims."  Plaintiff marked an "X" in the column indicating "None."  Pl.'s Pet. and Schedules, Ex. "F" to Def.'s Mot. for Summ. J., p. 19, at ¶ 21.

Plaintiff filed his Amended Bankruptcy Schedule on July 18, 2007.  Am. Bankr. Schedule, Ex. "G" to Def.'s Mot. for Summ. J., p. 2.  Once more, Paragraph 20 of his Bankruptcy Schedule B, entitled "Personal Property," required Plaintiff to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims."  Plaintiff disclosed a "Class Action Suit - Ameriquest as Plaintiff" with an "unknown" current market value in the corresponding column, but did not reveal his claim in this case.  Pl.'s Am. Bankr. Schedule, Ex. "G" to Def.'s Mot. for Summ. J., p. 2, at ¶ 21.  Pursuant to his representations made to the Bankruptcy Court, a Chapter 13 Plan was confirmed on behalf of Plaintiff on November 16, 2007.  Ex. "H" to Def.'s Mot. for Summ. J.

It is evident to this Court that Plaintiff did not identify the present lawsuit, or any potential claim arising out of the facts surrounding this lawsuit, in his Petition or schedules, inasmuch as his Second Amended Complaint was filed April 7, 2003, prior to the filing of his Chapter 13 Petition on June 25, 2007.  Pursuant to this Court's Order of Severance entered on August 17, 2006, Plaintiff filed his individual Complaint on September 29, 2006.  Both Plaintiff's Second Amended Complaint and his Individual Complaint assert identical claims pertaining to his employment history with Defendant.   "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has

-10-

accrued." *Matter of Swift*, 129 F.3d 792, 795 (5th Cir. 1997) (quoting *Luling Oil & Gas Co. v. Humble Oil & Refining Co.,* 144 Tex. 475, 191 S.W.2d 716, 721 (1946)).   Thus, these claims should have been revealed on Plaintiff's schedules of assets.   To date, Plaintiff has never sought to amend or correct his schedules to disclose his discrimination claims to the Bankruptcy Court.

Plaintiff's non-disclosure amounts to an assertion to the Bankruptcy Court that this asset did not exist, which is inconsistent with his current position in this case. The first prong of the test for applicability of judicial estoppel, namely whether the position of the party against whom estoppel is sought is plainly inconsistent with its previous position, is clearly satisfied.   *Jethroe*, 412 F.3d at 600 (holding, in case by former employee against employer alleging discrimination in violation of Title VII, that plaintiff's non-disclosure of existence of pending EEOC complaint when she filed her Chapter 13 petition and of filing of lawsuit during pendency of her bankruptcy satisfied first element of judicial estoppel); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (holding that omission of a personal injury claim from Chapter 7 debtors' mandatory bankruptcy filings is tantamount to representation that no such claim existed, and that subsequent action in state court is blatant inconsistency that readily satisfies first prong of judicial estoppel inquiry).

2.     Did the Previous Court Accept Plaintiff's Earlier Position?

As for whether Plaintiff convinced a court to accept the prior position, it is beyond dispute that the Bankruptcy Court granted him relief based upon his representations to that Court.   This second element of judicial estoppel only requires

"that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *In Re Coastal Plains*, 179 F.3d at 206 (quoting *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)).  This Court concludes that, by confirming a Chapter 13 Plan for Plaintiff, the Bankruptcy Court relied, at least in part, on Plaintiff's bankruptcy schedules as presented in June and July 2007.   Therefore, the second prong is satisfied.  *In re Superior Crewboats, Inc.*, 374 F.3d at 335 (finding that the adoption requirement by a court in the judicial estoppel context does not require a formal judgment, and holding that the bankruptcy court's issuance of a "no asset" discharge was an adoption of the debtors' position); *see also Mack v. Lester Coggins Trucking, Inc.*, 2008 WL 190740, *2 (S.D. Miss. 2008).

3.   <u>Did Plaintiff Gain an Unfair Advantage, Impose an Unfair Detriment, or Act Inadvertently?</u>

 Plaintiff argues in his Response that he:

> certainly had no intention to defraud his creditors, and his creditors have not yet been 'victimized' ; if the plan is amended, they will benefit from any recovery herein.
>
> * * *
>
> If Edwards' inadvertent omission of his claim can be remedied in the bankruptcy court, he should be allowed sufficient time to make the attempt.

Pl.'s Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J., pp. 1-2.

Plaintiff would clearly gain an unfair advantage by receiving a confirmed payment plan for his disclosed debt while retaining his claims as an asset.  "Judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to

fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Reed v. City of Arlington*, 2011 WL 3506100 *2 (5th Cir. 2011). The Fifth Circuit has stated that "[i]t goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *In re Coastal Plains*, 179 F.3d at 207-08 (citing 11 U.S.C. § 521(1)). In fact, the Fifth Circuit has noted that "the importance of this disclosure duty cannot be overemphasized." *Id.* at 208 (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988) (discussing importance of disclosure to creditors and to bankruptcy court)). In bankruptcy cases, "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Id.* at 210 (emphasis in original)(internal citations omitted). To date, Plaintiff has not moved for any relief, of any kind, in the Bankruptcy Court. While Plaintiff claims that, as of October 26, 2010, this was inadvertent, "knowledge" in the judicial estoppel context simply means knowledge of facts giving rise to Plaintiff's claim, not of Plaintiff's duty to report his claim to the Bankruptcy Court. *In Re Coastal Plains*, 179 F.3d at 212.

"Judicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Id.* at 210. The law is clear that a lack of awareness of the statutory disclosure duty is not sufficient to avoid the application of judicial estoppel

in this context.  *See id.*; *see also Kamont v. West*, 83 F. App'x 1, *3  (5th Cir. October 31, 2003)(holding that debtor "must show that she was unaware of the facts giving rise to her claim, not of her duty to report her claim").   Plaintiff's claims against Defendant had clearly accrued as of the date he filed for Chapter 13 bankruptcy protection; therefore, it is inapposite for Plaintiff to argue, and in fact, Plaintiff does not argue, that he did not have knowledge of the facts giving rise to his claims as of the date of his bankruptcy filing.  With respect to the question of any "motive for concealment" of the claim, the Bankruptcy Court granted Plaintiff relief on November 16, 2007, subsequent to disclosure of his debts pursuant to the Chapter 13 plan, as codified in 11 U.S.C. § 1328(a).  *See* Order Confirming Chapter 13 Plan, Ex. "H" to Def.'s Mot. for Summ. J.

Plaintiff's failure to disclose his alleged civil rights violations and related claims in the course of filing and seeking to amend his Chapter 13 Plan constituted a representation to the Bankruptcy Court that he was not involved in any proceedings and that he had no potential causes of action. *See In Re Costal Plains*, 179 F.3d at 210. Because assets continued to belong to Plaintiff under a Chapter 13 case, his obligation to disclose pending and unliquidated claims in the bankruptcy proceedings constituted an ongoing duty. *See Kane*, 535 F.3d at 384-85.

Within the meaning of the case law cited above, Plaintiff had both an incentive not to disclose his monetary claims against Defendant, and knowledge of the facts of the present claims.  While Plaintiff's professed lack of bad faith and unintentional non-disclosure may indeed be genuine, as a matter of law, they do not qualify as

"inadvertent" as contemplated by the Fifth Circuit in *Coastal Plains*. *See also Young v. Town of Greenwood*, 2009 WL 1924192 (W.D. La. 2009); *Benton v. Ryan's Family Steakhouse*, 222 F.R.D. 112, 114 (S.D. Miss. 2004). He would also gain an unfair advantage by having failed to reveal these claims on his bankruptcy schedules. Therefore, the elements necessary for application of judicial estoppel are present here, and summary judgment should be granted in favor of Defendant as to Plaintiff's monetary damage claims.

        4.      <u>Is Defendant Entitled to Prevail as a Matter of Law on Plaintiff's Non-Monetary Claims?</u>

In addition to his damages claims, Plaintiff's Complaint advances the following requests for following injunctive and declaratory relief:

     (a)    Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 19 through 36 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

     (b)    Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

     (c)    Issue a preliminary and permanent injunction enjoining NGSS . . . from engaging in each of the unlawful practices set forth in paragraphs 16 through 34 and from continuing other practices found to be in violation of federal law;

     (d)    Direct NGSS to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

(e)      Enter a permanent and mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

(f)      Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. . . .

(g)      Require that NGSS institute a policy that affords equal opportunities for training and development. . . .

(h)      Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff; . . .

Pl.'s Compl., at pp. 13-14.

Defendant contends that judicial estoppel bars all of Plaintiff's claims, including those claims seeking declaratory and injunctive relief. It argues that the distinction between claims for damages and claims for declaratory and injunctive relief in this context has never been adopted by the Fifth Circuit. Def.'s Rebuttal in Supp. of Mot. for Summ. J., p. 3. Defendant further asserts that "the principal injunctive relief sought by the plaintiff in this case would have added value to his Chapter 13 estate and thus was required to be disclosed." Def.'s Rebuttal in Supp. of Mot. for Summ. J., p. 3.

While the Fifth Circuit has not directly addressed this issue, other courts have held that judicial estoppel does not preclude a debtor-plaintiff from seeking injunctive relief under certain circumstances. *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1289 & n.3 (11th Cir. 2002)(noting that "[t]he facts of a particular case will always

-16-

guide a court's analysis of this issue," and holding Chapter 13 debtor-plaintiff was

judicially estopped from pursuing monetary damages for his discrimination claim, but

holding that plaintiff was not judicially estopped from pursuing injunctive relief, and

also noting that "knowledge that the debtor was pursuing a discrimination claim

seeking injunctive relief that offered no monetary value to the estate, would not, in all

likelihood, have changed the bankruptcy court's determination about how to proceed

with the debtor's bankruptcy.").   However,

> . . . [t]he Supreme Court has refused to 'establish inflexible prerequisites
> or an exhaustive formula for determining the applicability of judicial
> estoppel,' stating instead that different considerations 'may inform the
> doctrine's application in specific factual contexts.' *Id.* at 751; *see also* 18
> Moore's § 134.31 at 73 ('Because the doctrine is equitable in nature, it
> should be applied flexibly, with an intent to achieve substantial justice....
> Application of the doctrine of judicial estoppel should be guided by a
> sense of fairness, with the facts of the particular dispute in mind.').

*Reed v. City of Arlington*, 2011 WL 3506100 at *2 (quoting *New Hampshire v. Maine*,
532 U.S. 742, 751 (2001)).

In the context of this case, the Court is of the view that knowledge of Plaintiff's

claims would have added monetary value to Plaintiff's bankruptcy estate.   In addition,

as this Court found when rendering its decision in *Bridgewater v. Northrop Grumman*

*Shipbuilding Systems*, 2007 WL 4221212  (S.D. Miss. November 29, 2007), the case of

*Lett v. Reliable Ruskin*, 2006 WL 2056582 (M.D. Ala. July 24, 2006), is instructive.   In

*Lett*, the district court concluded that the "key is to examine the demands made by the

Plaintiff and then determine if success on the merits would result in any value being

added to the debtor Plaintiff's estate." *Id*. at *7.   Ultimately, that court concluded that

a Chapter 13 debtor-plaintiff is judicially estopped from seeking relief in the form of

-17-

a promotion because in a Chapter 13 bankruptcy, projected disposable income is allotted to make payments under a bankruptcy plan, and because a promotion would increase debtor-plaintiff's income, this would have added value to the bankruptcy estate. *Lett,* 2006 WL 2056582, at \*7 (citing *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir. 2003)).

The Court here is of the view that success on the merits of Plaintiff's claims for declaratory judgment and injunctive relief could result in his receiving back pay, salary adjustments, and adjustment of retirement benefits. These would have added value to his bankruptcy estate. For this reason and in order to further achieve substantial justice, Plaintiff should be judicially estopped from pursuing these claims.

## III. CONCLUSION

As discussed in more detail above, the Court finds that there are no genuine issues of material fact in this case. Because it is clear that Plaintiff is judicially estopped from pursuing his claims against Defendant, Defendant's Motion for Summary Judgment is well taken and must be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED,** that, for the reasons stated herein, the Motion for Summary Judgment of Defendant, filed September 24, 2010 [398-1], should be and hereby is **GRANTED,** and this case will be dismissed with prejudice.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, all remaining pending motions should be and hereby are **DENIED AS MOOT.**

-18-

**SO ORDERED AND ADJUDGED**, this the 29th day of August, 2011.


*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE